IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE OAK BROOK SURGICAL CENTRE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10 C 5580 |
| AETNA, INC. and AETNA HEALTH, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

In this diversity case that was removed from the Circuit Court of Cook County, plaintiff Oak Brook Surgical Centre asserts that defendants Aetna, Inc. and Aetna Health, Inc. (collectively, Aetna) pre-approved medical benefits for patients before Oak Brook Surgical Centre provided treatment. Aetna then declined to provide coverage, leaving Oak Brook Surgical Centre with over $3.4M in unpaid bills. Oak Brook Surgical Centre's amended complaint contains a single count of promissory estoppel. Contending that the promissory estoppel claim is preempted by ERISA, Aetna seeks to dismiss the amended complaint. For the following reasons, Aetna's motion is denied.

**Background**

Oak Brook Surgical Centre initiated this case by filing a three-count complaint against Aetna in the Circuit Court of Cook County, Illinois, alleging breach of contract, a violation of the Illinois Insurance Code, 215 ILCS § 5/155, and promissory estoppel based on alleged confirmation by Aetna of coverage for services provided by Oak Brook Surgical Centre. The original complaint was based on Aetna's decision not to pay medical benefits to Oak Brook Surgical Centre, which was the assignee of the patients who received care at Oak Brook Surgical

Centre. According to Oak Brook Surgical Centre, Aetna wrongfully and in violation of the patients' health insurance policies failed to pay medical benefits pursuant to the terms of the patients' insurance plans. Alleging that the state law claims were preempted by ERISA, Aetna removed the case.

A motion to dismiss based on ERISA preemption followed. In response, Oak Brook Surgical Centre argued that the motion was premature because there is a material question of fact as to whether all of the patients at issue were participants in ERISA plans because: (1) it could not ascertain which policies are governed by ERISA since it could not obtain copies of the patients' insurance plans prior to providing coverage, and (2) it could not identify policyholders in the complaint without violating the Health Insurance Portability and Accountability Act. *See* Dkt. 22.

The court denied the motion to dismiss, stating:

> Oak Brook Surgical Centre's position is problematic. It concedes that some of the plans at issue are employer or association based, and appears to be conceding that some of these plans may be within the ambit of ERISA. With respect to claims made under those plans, it does not contend that it has exhausted its administrative remedies. *See* Dkt. 13 at 8. Yet, its complaint attempts to proceed as to *all* of the denied claims, and does not distinguish between claims made under employer or association based plans and claims made under individual plans.
>
> The court trusts that Oak Brook Surgical Centre made a proper pre-filing inquiry before submitting its complaint. It also appreciates that Aetna, not Oak Brook Surgical Centre, has access to the plans at issue. Thus, it finds that Aetna's ERISA preemption arguments are premature as the court cannot address Aetna's arguments on the merits unless it goes beyond the four corners of the complaint and speculates about the policies at issue. As both of these are improper, Aetna's motion to dismiss based on ERISA preemption is denied without prejudice.

*Id*.

Subsequently, Oak Brook Surgical Centre voluntarily dismissed its breach of contract and Illinois Insurance Act claims, leaving only its claim for promissory estoppel. As before, this claim is based on its contacts with Aetna and Aetna's alleged representations that certain services provided to Aetna members would be covered under the Aetna members' insurance benefit plans. Oak Brook Surgical Centre, however, no longer specifically alleges that it received an assignment of benefits under the Aetna members' insurance. It also contends that its claim is based solely on the representations about coverage made by Aetna.

## Standard for a Motion to Dismiss

To survive a motion to dismiss, a complaint's request for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A complaint meets this standard when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[N]aked assertions devoid of further factual enhancement" are insufficient. *Id*. at 1949 (internal quotation marks omitted). Thus, the Supreme Court recently clarified that determining if a complaint states a plausible claim is "a context-specific task that requires [the court] to draw on [its] judicial experience and common sense." *Id*. at 1950.

## Discussion

Aetna argues that Oak Brook Surgical Centre's promissory estoppel claim is preempted by ERISA. Any examination of whether a state law claim is preempted by ERISA begins with a look to ERISA itself:

> Except as provided in subsection (b) [the savings clause] of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee

>benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

Unlike with the first motion to dismiss, Oak Brook Surgical Centre has abandoned its claim that the health plans at issue are not covered by ERISA. Instead, it appears to concede that the plans are governed by ERISA but nevertheless argues that a health plan's representations to a provider about coverage provide the basis for an independent cause of action under state law that is not preempted by ERISA. In support, Oak Brook Surgical Centre directs the court's attention to the Seventh Circuit's decisions in *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare*, 538 F.3d 594 (7th Cir. 2008), as well as the Fifth Circuit's decision in *Memorial Hosp. System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990), and a case from this district, *Rehabilitation Institute of Chicago v. Group Administrators, Ltd.*, 844 F.Supp. 1275, 1281-82 (N.D. Ill. 1994).

The *Franciscan Skemp* case was brought by a healthcare provider who provided services after receiving an oral verification of coverage from the patient's ERISA-covered health plan. After the provider submitted a claim as the patient's assignee, the plan declined to pay benefits because the patient's coverage had been retroactively canceled due to the patient's failure to pay premiums. The provider then filed suit in state court alleging state law claims of negligent misrepresentation and estoppel. The plan removed on the grounds that the claims were preempted by ERISA. The district court agreed, finding that the provider was the patient's assignee and thus stood in the shoes of the patient and was, in effect, trying to challenge the

plan's determination of coverage. *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare*, 538 F.3d at 595-96.

In considering preemption, the Seventh Circuit turned to the Supreme Court's decision in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), stating:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B) . . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare*, 538 F.3d at 596, *quoting Aetna Health Inc. v. Davila*, 542 U.S. at 210.

The court then rejected the contention that the provider was limited to acting as the patient's assignee, stating:

> What the district court and [the plan] too easily overlook, however, is that [the provider] is not bringing these claims as [the patient's] assignee. Admittedly at first glance it looks like a claim that would arise under ERISA – a beneficiary's assignee bringing an action to recover plan benefits. But upon closer examination, that is not at all what is happening here.
>
> [The provider] is bringing these claims of negligent misrepresentation and estoppel, not as [the patient's] assignee, but entirely in its own right. These claims arise not from the plan or its terms, but from the alleged oral representations made by [the plan] to [the provider]. [The provider] could bring ERISA claims in [the patient's] shoes as a beneficiary for the denial of benefits under the plan; but it has not. In fact, [the provider] does not at all dispute [the plan's] decision to deny [the patient]. [The provider] acknowledges that [the patient] is not entitled to benefits, because she failed to make her COBRA premium payments. It would be odd indeed, then, to conclude that [the provider] is standing in [the patient's] shoes as a beneficiary seeking benefits when [the provider] acknowledges that [the patient] is not actually entitled to any benefits.

> [The provider] is basing its claims on a conversation to which [the patient] was not even a party. Thus [the provider] is not and could not be "standing in her shoes" or asserting her rights. [The provider] is bringing its own independent claims, and these claims are simply not claims to "enforce the rights under the terms of the plan." ERISA § 502(a)(1)(B).

*Id*. at 597-98.

The court also rejected the argument that the provider's submission of an assignment of benefits meant it was acting as the patient's assignee, explaining:

> What of the claim form then? We do not quarrel with the determination below that the claim form evidences an assignment of benefits; we just disagree with the import of that determination. The claim form was filed before [the provider] was aware that [the patient] hadn't made her payments and that [the plan] would deny coverage. At that point in time, it was perfectly logical for [the provider] to file the form as [the patient's] assignee. Upon learning that [the plan] would not pay due to [the patient's] failure to pay COBRA premiums, [the provider] then asserted its own rights by bringing this lawsuit. Simply because at one point in time [the provider] acknowledged an assignment from [the patient] does not mean that it simultaneously and implicitly gave up any claim(s) it had against [the plan] apart from that assignment.

*Id*.

Finally, the court distinguished between a request for payment under the plan and a request for payment flowing from a representation about coverage, noting that:

> [The plan] also makes much of the references in the complaint to the plan and the request that [the plan] pay "to the extent said services would otherwise have been covered." These references, however, are solely for the purpose of identifying a damages amount; they do not convert the claims into ones for plan benefits. [The provider] seeks damages, not wrongfully denied benefits.

*Id*. at 599.

Accordingly, the Seventh Circuit held that the provider's claim could not have been brought under ERISA § 502(a)(1)(B) because it was not "suing 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan,' which is precisely all § 502(a)(1)(B) provides." *Id*. Instead, according to the Seventh Circuit, the provider was seeking damages based on alleged misrepresentations made by the plan regarding coverage. The *Franciscan Skemp* court also found that the plan had a duty independent of those imposed by ERISA based on state law theories of negligent misrepresentation and estoppel. *Id*. Therefore, it concluded that the district court's finding of preemption was incorrect. *Id*.

Oak Brook Surgical Centre champions the decision in *Franciscan Skemp* and argues that like the provider in that case, it is asserting an independent claim of promissory estoppel that is not reliant on the underlying ERISA plan. Aetna, on the other hand, attempts to distinguish the rationale in *Franciscan Skemp* by noting that in that case and in *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990), a case cited by the *Franciscan Skemp* court, the patient turned out to not have any coverage under an ERISA plan. Aetna then reasons that misrepresentations about coverage can only escape the reach of ERISA preemption if there is no underlying ERISA coverage because in that instance, recovery by the providers would not implicate an ERISA plan. If the patient is a participant in an ERISA plan, however, Aetna asserts that allowing a provider to recover based on representations about coverage would permit the provider to make an end-run around the plan's coverage determination based on a state law theory. Aetna concludes that this so-called end-run is preempted by ERISA.

The precise question presented in this case — whether representations made by an insurer to a provider about patients' coverage under a plan governed by ERISA — has not been squarely addressed by the Seventh Circuit. Both sides can find support for their positions. Besides, *Franciscan Skemp*, 538 F.3d at 596-99, decisions finding no preemption include *Access*

*Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385-86 (5th Cir. 2011) (provider's claim was not preempted because the plans' terms were irrelevant to whether the insurer made misleading claims about coverage and the relationship between the provider and the insurer was not comprehensively regulated by ERISA); *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma*, 944 F.2d 752, 756 (10th Cir. 1991) (a provider's action to recover promised payment from an insurer "is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan" and a contrary conclusion "would stretch [ERISA's] 'connected with or related to' standard too far"); *Memorial Hosp. System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990) (state insurance misrepresentation claim not preempted because the risk of non-payment should be shifted from the provider to the insurer which "through its agents misrepresented to the provider the patient's coverage under the plan" because the allocation of risk among commercial actors doing business in a state is a "classically important" state interest that is not regulated by federal law alone); *Vencor Hospitals-Ltd. Partnership v. Aetna U.S. Healthcare, Inc.*, No. IP00-0695CBS, 2001 WL 1029109, at *3 (S.D. Ind. Sept. 6, 2001) (because "the relationship of the parties to the misrepresentation and the source of the duties at the heart of the dispute determine whether state law claims fall within ERISA's preemptive sweep," provider's misrepresentation claim was not preempted since the provider was "suing to recover not [the patient's] benefits under the plan, but the extent of [the insurer's] misrepresentation to [the provider"); *Rehabilitation Institute of Chicago v. Group Administrators, Ltd.*, 844 F.Supp. 1275, 1281-82 (N.D. Ill. 1994) ("Through its recognition of an action for promissory estoppel, Illinois has decided that the risk of loss from misstatement in the commercial arena ought to lie with the

putative promisor, rather than with the party who justifiably relies on the erroneous promise. This risk allocating policy clearly is a traditional assertion of state authority" and is outside the ambit of ERISA because claims based on misrepresentations about coverage made by third party health care providers are divorced from the relationship between the plan and the plan participant); and *Forest Springs Hosp. v. Illinois New Car and Truck Dealers Ass'n Employees Ins. Trust*, 812 F.Supp. 729, 733 (S.D. Tex. 1993) ("this Court sees no adequate explanation of how insulating plan fiduciaries from the consequences of their own misrepresentations to third-party providers would further any of ERISA's goals").

There is opposing authority, however, holding that provider claims based on alleged misrepresentations about coverage are preempted. *See Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 331 (2d Cir. 2011) (distinguishing between "claims that implicate coverage and benefits established by the terms of the ERISA benefit plan" and "claims regarding the computation of contract payments or the correct execution of such payments" and concluding that denials of reimbursement to a provider based on a lack of required pre-certification, a plan exclusion, or the member's ineligibility for coverage under the plan are preempted because they implicate "the basic right to payment" under the plan); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991) (provider's state law claims for promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith were preempted by ERISA because the "state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan"); *Parkview Hosp., Inc. v. White's Residential & Family Services, Inc.*, No. 1:07-CV-0208 WCL, 2008 WL 89878 (N.D. Ind. Jan. 7, 2008)

("The ultimate question in this case is whether [the provider] is entitled to payment from the Plan for services rendered to the [patients]. The existence of coverage under the Plan is a prerequisite to that entitlement and it is this question that each of the state law claims seek to have resolved" so the provider's state law claims are preempted); *Powers v. Corn Products Intern., Inc.*, 557 F.Supp. 2d 928, 935 (N.D. Ill. 2008) (provider's claims were preempted because resolution of those claims necessarily turns on an interpretation of the contract, which is governed by federal law and ERISA plans cannot be modified via oral statements).

A district court in this district, many years before the Seventh Circuit's decision in *Franciscan Skemp*, attempted to reconcile the divergent results reached in third-party provider cases by noting that:

> in an action for misrepresentation, the claim's relation to the plan depends on the nature of the representation: if it was merely regarding whether or not the patient had coverage and, hence, created a duty between insurer and provider, the plan is not involved and the action does not "relate to" the plan; however, if the conversations concerned the nature of the coverage under the plan—*e.g.*, whether an illness was a pre-existing condition or whether a given procedure was covered under the policy—they do "relate to" the plan for ERISA preemption purposes.

*Parkside Lutheran Hosp. v. R.G. Zeltner & Assoc., Inc.*, 788 F.Supp. 1002, 1006 (N.D. Ill. 1992); *see also Coonce v. Aetna Life Ins. Co.*, 777 F.Supp. 759, 768 (W.D. Mo. 1991) ("This is not a case where the health care provider simply called the plan administer to verify that a prospective patient had coverage . . . . Rather, this case involves a series of discussions that took place for the express purpose of determining whether [the insured] would continue to receive benefits" so allowing receipt of benefits would act as an impermissible modification of the plan's terms).

Here, the court is fundamentally troubled by Aetna's insistence that it can make whatever representations it desires with impunity because ERISA shields it from liability. It is true that if a

insurer tells a provider that a service is covered and then decides that the service is not covered, requiring the insurer to pay would, in essence, force the insurer to reverse its decision. Critically, however, the basis for the reversal is completely outside the plan. As discussed in decisions cited above finding that ERISA does not preempt providers' state law misrepresentation claims, a court considering a misrepresentation claim would not need to consider the plan terms to resolve the misrepresentation claim since the plan terms have no bearing on the resolution of that claim.

Moreover, misrepresentations are not oral modifications of a plan (which are prohibited by ERISA) since they exist completely independent of whatever the plan's language may be. *Cf. Coonce v. Aetna Life Ins. Co.*, 777 F.Supp. at 768 (representations made by insurer during calls made by provider were not actionable because the provider engaged in a series of discussions about the patient's ongoing entitlement to benefits, and did not merely call to confirm coverage, so "the representations defendants are alleged to have made would have modified the plan by allowing [the insured] to receive benefits which were no longer available to plan participants"). In other words, if an insurer incorrectly tells a provider "the plan says that the moon is made of green cheese," the provider's misrepresentation claim turns on the representation made by the insurer. If the representation is false, the provider may be able to prevail on a misrepresentation claim regardless of what the plan actually says as the plan's language is irrelevant. The viability of a misrepresentation claim, therefore, is not dependent on the plan's language so the alleged misrepresentation does not orally modify the plan.

Similarly, the fact that the disposition of a misrepresentation claim may impact the plan does not necessarily mean that it is preempted as "ERISA's preemption provision is very broad, but the word 'related' must not be taken literally." *Pohl v. National Benefits Consultants, Inc.*,

956 F.2d 126, 128 (7th Cir. 1992), *citing Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983). Thus, in an example provided by the Seventh Circuit, if an ERISA plan participant went to the office of her plan administrator to inquire about coverage and then slipped on a banana peel and filed a negligence suit, that case would not be preempted even though "slip-and-fall liability would increase [the plan administrator's] costs and perhaps therefore the fee it charged for administering the employee welfare plan, and the added fee might hurt the participants." *Id*. However, the plan participant (who has a direct relationship with the plan, unlike a third party healthcare provider) cannot pursue a state law claim against the plan based on the plan's alleged misrepresentation about coverage because plan participants are "confin[ed] . . . to the entitlements spelled out in writing. Not the semantics of the word 'relate,' but the policy of the statute, requires preemption and the denial of a remedy." *Id*.

A third-party provider's misrepresentation claim, in contrast, is not constrained by the plan because it, like the banana peel slip and fall case, is simply not related to the plan in any substantive way since its fate depends on what the plan administrator said upon inquiry, not upon the language of the plan itself. A patient's misrepresentation about coverage made to a provider is another "banana peel case" that is not preempted by ERISA since it turns on what the patient told the provider. "Certainly, it would be hard to conceive that a state law cause of action against a patient who misrepresented that he had coverage under a benefit plan, when in fact he did not, would be preempted by ERISA. The Court sees no reason for a different result to follow just because the misrepresentation comes from a benefit plan, not from a patient. It seems inappropriate to saddle the third-party provider with the risk of nonpayment rather than shifting the burden to the benefit plan, which through its agents misrepresented to the provider the

patient's coverage under the plan." *Forest Springs Hosp. v. Illinois New Car and Truck Dealers Ass'n Employees Ins. Trust*, 812 F.Supp. at 733. Accordingly, while ERISA undoubtedly has a broad reach, it does not cover every possible claim that might involve a plan.

Moreover, Aetna's emphasis on the fact that the patient in *Franciscan Skemp* had no coverage at all since the policy was canceled is a distinction without a difference. Notably, the *Franciscan Skemp* court focused on the fact that the provider's claims were based on representations made by the plan administrator and thus were "independent" and "simply not claims to enforce the rights under the terms of the plan." *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Wlfare*, 538 F.3d at 597-98 (internal quotations omitted). The key to the decision in *Franciscan Skemp* was the fact that the misrepresentation claim stood alone and did not rely on the plan. That principle dictates the conclusion in this case that Oak Brook Surgical Centre's claims are similarly not preempted.

The court thus finds that ERISA does not preempt Oak Brook Surgical Centre's promissory estoppel claim. This leaves the court with a single state law claim raised in a case that was originally removed on the basis of preempted claims that are no longer at issue. The parties shall file, by March 26, 2012, a joint position paper addressing whether Oak Brook Surgical Centre's claims should continue to be litigated in federal court. *See Decatur Memorial Hosp. v. Connecticut General Life Ins. Co.*, 990 F.2d 925, 927-28 (7th Cir. 1993) (""If ERISA leaves some corner open to state law, a district court could resolve the federal claim and dismiss without prejudice, or remand, *see Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), to permit the state court to address the state-law theory. But it need not remand, 28 U.S.C. § 1367, and a remand would be imprudent if the state-law theory does not exist or is preempted").

**Conclusion**

For the above reasons, Aetna's motion to dismiss the amended complaint [40] is denied. The parties shall file, by March 26, 2012, a joint position paper addressing whether Oak Brook Surgical Centre's claims should continue to be litigated in federal court.

DATE: March 6, 2012

　　　　　　　　　　　　　　　　　　　　　/s/ Blanche M. Manning
Blanche M. Manning
United States District Judge